UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KARRENA USA INC. f/k/a KARRENA LLC and KARRENA INTERNATIONAL CHIIMENY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COBRA THERMOSOLAR PLATS, INC.,<br><br>Defendant. | Case No. 2:21-CV-01291-GMN-EJY<br><br>**ORDER**<br><br>**And**<br><br>**RECOMMENDATION** |

Pending before the Court are Defendant's Motion to Compel Arbitration and Stay the Action and Plaintiff's Countermotion for Court Appointment of Arbitrator.  ECF Nos. 12 and 19.  The Court has considered all responses, replies, and declarations related to these motions and finds as follows.

**I.      Background**

Defendant Cobra Thermosolar Plats, Inc. entered into a contract with Plaintiff Karrena USA Inc. in January of 2020 to contrast the Hot Salts Tank New Foundation, part of an ongoing larger project with which Plaintiff has been involved since 2013.  ECF No. 12 at 7.  Included in the contract was a plain and simple arbitration provision stating, in relevant part, that: (1) "[a]rbitration shall take place in Nevada; the language will be English and the applicable law shall be the Nevada's Law"; and (2) disputes related to the contract will be resolved through arbitration "according [to] the rules of the Civil and Commercial Court of Arbitration (CIMA)[1], to whom is entrusted the administration and appointment of the sole arbitrator."  *Id.* at 9.  On July 6, 2021, Defendant filed an arbitration request with CIMA regarding a dispute between the parties arising from the contract.  *Id.* at 10.  Plaintiff filed this action for breach of contract (and other claims) one day later on July 7, 2021.  *Id.*

Defendant contends that the filing of this action was in contravention of the arbitration provision to which the parties agreed, and that Plaintiff seeks to avoid arbitration.  *Id.*  In its Response and Countermotion Plaintiff alleges it filed this matter somehow not knowing of the arbitration

---

[1]      It is undisputed that CIMA is an organization based in Madrid, Spain.  ECF No. 19 at 4.

provision in the contract it signed, but now submits to arbitration.  ECF No. 17 at 2.  Plaintiff nonetheless asks the Court to disregard the contract language requiring the parties to arbitrate through CIMA, designated to appoint the sole arbitrator, and to instead appoint a "fair, impartial, and knowledgeable arbitrator" of the Court's choosing.  ECF No. 17 at 2; *see also* ECF No. 14 at 56.

Plaintiff argues the Court should appoint an arbitrator licensed to practice law in Nevada who is familiar with Nevada construction law.  ECF No. 19 at 4.  Plaintiff says this is necessary because (i) the contract at issue arises from a construction dispute governed by Nevada law, (ii) "CIMA's ability to select a neutral arbitrator is compromised by the fact that Cobra's parent company, ACS, is a prominent corporation in Spain" and (iii) upon information and belief, ACS "is a significant and regular customer of CIMA."  ECF No. 19 at 10.

Before filing its Countermotion, Plaintiff asked Defendant to agree to the selection of a Nevada licensed attorney knowledgeable in Nevada construction law, but Defendant refused, arguing the contract language pertaining to arbitration was clear.  ECF No. 23 at 7.  Plaintiff asks the Court to invoke its power under Section 5 of the Federal Arbitration Act ("FAA"), which states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator … such method shall be followed; but … *if a method be provided and any party thereto shall fail to avail himself of such method*, or if for any other reason there shall be a lapse in the naming of an arbitrator … then *upon application of either party* to the controversy the court *shall* designate and appoint an arbitrator … who shall act under the said agreement with the same force and effect as if he … had been specifically named therein[.]

9 U.S.C. § 5.  Plaintiff argues that Section 5 mandates Court intervention in the arbitration selection process in light of what Plaintiff deems a "good faith refusal" to comply with the terms of the arbitration provision in the contract.  ECF No. 19 at 9.  In support of this argument, Plaintiff cites numerous cases in which courts appointed so-called umpires under Section 5 where one or both parties were unable to agree on another party's choice of an arbitrator.  *See, e.g.*, *Baylor Health Care Sys. v. Beech St. Corp.*, Case No. 3:13–MC–054–D, 2013 WL 2095777 (N.D. Tex. May 15, 2013); *Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London Syndicate 53*, 615 Fed. App'x 22, 23 (2d Cir. 2015); *Stop & Shop Supermarket Co. LLC v. United Food & Com. Workers Union*

1   *Loc. 342*, 246 Fed. App'x 7, 11 (2d Cir. 2007); *Covington NM, LLC v. Forest City NM, LLC*, Case

2   No. 14-615 LH/WPL, 2015 WL 11111474 (D.N.M. Jan. 6, 2015).

3          In contrast, Defendant points to the first sentence of FAA Section 5 (which Plaintiff omits)

4   that states "[i]f in the agreement provision be made for a method of naming or appointing an

5   arbitrator or arbitrators or an umpire, such method shall be followed." ECF No. 23 at 3, quoting 9

6   U.S.C. § 5. Defendant argues that Plaintiff is asking the Court to ignore the arbitration provision in

7   the contract that Plaintiff "reviewed, accepted, and signed." *Id.* According to Defendant, the plain

8   language of the arbitration provision gives CIMA the power to select an arbitrator who must conduct

9   the arbitration in Nevada, in English, applying Nevada law. ECF No. 23 at 4. Defendant points out

10  this language reflects a compromise to that Karrena agreed when it signed the contract. ECF No. 14

11  at 3. Further, Defendant states that Plaintiff previously signed onto and gained familiarity with the

12  underlying contract containing the same arbitration provision while working on other projects with

13  Defendant since the parties began their business relationship in 2013. *Id.* Defendant addresses and

14  distinguishes Plaintiff's case law arguing that the issue here is not two parties facing a deadlock in

15  selecting an arbitrator after months of back and forth, but one party who is refusing to cooperate

16  with the operative process for selecting an arbitrator altogether. ECF No. 23 at 5-7. Finally,

17  Defendant argues that Plaintiff's claims of bias against CIMA, supported only by a declaration

18  Plaintiff's lawyer (ECF No. 20), are unsubstantiated. ECF No. 23 at 8.

19  **II.    Discussion**

20         Arbitration agreements are contracts; as such, the FAA requires arbitration agreements be

21  enforced "according to their terms" using the guiding principles of contract law. *AT&T Mobility*

22  *LLC v. Concepcion*, 563 U.S. 333 at 339; 9 U.S.C. § 2. Section 5 of the FAA both mandates

23  adherence to an arbitration agreement provision naming the method for selecting an arbitrator and

24  also allows the Court to intervene and appoint an umpire "if a method be provided and any party

25  thereto shall fail to avail himself of such method." 9 U.S.C. § 5. Plaintiff argues that its refusal to

26  follow the pre-determined arbitrator selection process in the arbitration agreement triggers the

27  Court's duty to appoint a neutral umpire under Section 5. ECF No. 19 at 5. The Court does not

28

1   agree with Plaintiff's interpretation of Section 5.  The Court further finds the case law Plaintiff cites

2   in support of its position inapposite and without the force of binding precedent.

3       Plaintiff claims a "good faith" refusal to comply with the arbitration provision of the contract

4   that gives CIMA the power to select an arbitrator.  *Id.* at 6.  However, Plaintiff's efforts to adhere to

5   the provision and justification for refusing to do so are insufficient to merit disregarding Section 5's

6   clear statement that parties shall comply with the arbitrator selection method to which they

7   contracted.  The parties appear to agree that Plaintiff has not made any attempt to submit to the

8   CIMA arbitration selection process or given CIMA the opportunity to propose a list of candidates in

9   accordance with the contract and its rules.  ECF Nos. 19 at 10; 23 at 3.  Plaintiff's only asserted

10  effort at agreement was to demand the arbitrator be a Nevada licensed attorney versed in Nevada

11  construction law despite the absence of these requirements in the arbitration process to which it

12  agreed.  ECF No 14-1 at 56.

13      Plaintiff also characterizes the issue as a "deadlock" requiring Court intervention, but does

14  not identify any conflict other than its unjustified refusal to abide by the contract terms.  ECF No.

15  19 at 11.  Defendant is correct that the instant case is factually distinguishable from *Pacific*, on which

16  Plaintiff relies, in which the Ninth Circuit commented in a footnote that Section 5 permits "not only

17  the blameless party to approach the Court."  *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance*

18  *Corp.*, 814 F.2d 1324, 1328 (9th Cir. 1987).  Unlike *Pacific*, this is not a case in which the parties

19  were navigating extensive ambiguity in the contracted-for arbitrator selection process, requiring

20  Court intervention after five months of attempted agreement.  Plaintiff may not need to be blameless

21  to invoke Section 5 of the FAA, but a party may not unilaterally manufacture an "deadlock" scenario

22  in order to avoid complying with the contract to which it agreed.

23      The cases Plaintiff cites, the majority of which are not binding on the Court, are all examples

24  of genuine breakdowns in the arbitration selection process after a concerted effort to comply.  In

25  addition, in the cited examples, the disputes in question were whether an individual or particular set

26  of arbitrators were mutually agreeable.  *See, e.g. Baylor*, 2013 WL 2095777 at * 1; *Odyssey*, 615

27  Fed. App'x 22 at 23; *Stop & Shop*, 246 Fed. App'x at 8-9.  Here, Plaintiff seeks to discredit the entire

28  institution designated in the arbitration provision of the contract thereby summarily rejecting all of

the arbitrators CIMA might propose without even considering their qualifications.  Further, in cases such as *Odyssey*, there was disagreement regarding contract interpretation pertaining to the arbitrator selection provision.  *Odyssey*, 615 Fed. App'x. at 23.  Finally, all of these cases involved a period of multiple months of negotiation leading to deadlock.  Plaintiff is correct that a temporal lapse is not a prerequisite to invoking Section 5 of the FAA, but such a lapse of time during which the parties attempt to negotiate a resolution is persuasive evidence that Court intervention is appropriate.

The Court is not persuaded that it must appoint an arbitrator to ensure a fair and neutral arbitration as Plaintiff contends.  Plaintiff submits nothing to warrant the conclusion that CIMA is so compromised by its alleged connections to Defendant that any individual arbitrator it chooses will be *per se* biased.  The information regarding CIMA's relationship to Defendant, even if true, was a fact available to Plaintiff at the time of contracting.  Plaintiff's speculation that a CIMA appointed arbitrator will not perform his or her professional obligation in a fair and neutral manner is insufficient to re-write the arbitration selection provision that Plaintiff agreed to as a sophisticated and experienced party.

Plaintiff had the opportunity to negotiate a contract that could have required mandatory arbitrator qualifications at the time of contracting, but either did not do so or tried unsuccessfully to do so.  Either way, Plaintiff ultimately agreed to terms that did not include what Plaintiff now asks the Court to mandate.  "It is the duty and responsibility of the courts[] not to re-write contracts according to their own views of what is practical and fair, but to enforce them in accordance with the evidence and recognized principles of law."  *U.S. v. Bethlehem Steel Corp.*, 315 U.S. 289, 310 (1942) (Murphy, J., concurring); *see also* 3 *Corbin on Contracts* § 535 (1960) (courts do not write contracts for the parties to them nor construe them other than in accordance with the plain and literal meaning of the language used.).  Thus, even if the Court found Plaintiff's concerns reasonable, the Court will not substitute its view for that to which the parties' agreed and that is, on its face, plain, enforceable contract language.

The purpose of Section 5's umpire provision is "to spur the arbitral process forward, rather than to let it stagnate into endless bickering over the selection process."  *Pacific* at 1329. The Court finds that the arbitral process will be similarly advanced through the parties' mutual adherence to

their agreement, which is clear in its clear terms and with which Plaintiffs have not shown a legitimate inability to comply.

**III.    Order**

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Compel Arbitration and Stay the Action (ECF No. 12) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Countermotion for Court Appointment of Arbitrator (ECF No. 19) is DENIED.

**IV.    Recommendation**

IT IS HEREBY RECOMMENDED that this matter be stayed for all purposes pending the arbitration.

Dated this 7th day of January, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).